PAPADELIS, Appellant

v.

FIRST AMERICAN SAVINGS BANK, Appellee.

[Cite as *Papadelis v. First Am. Sav. Bank* (1996), 112 Ohio App.3d 576.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69516.

Decided July 15, 1996.

*Joseph Bancsi,* for appellant.

*Howard A. Eisenhardt,* for appellee.

---

PATRICIA ANN BLACKMON, Judge.

Plaintiff-appellant, Nick N. Papadelis, appeals from a summary judgment granted in favor of defendant-appellee, First American Savings Bank, F.S.B., n.k.a. Charter One Bank, and assigns the following errors for our review:

"I. The trial court committed prejudicial error when it granted appellee's motion for summary judgment which contained material not permitted by and not in compliance with Ohio Civil Rule 56(C).

"II. The trial court erred when it granted appellee's motion for summary judgment because construing the evidence raised by the motion and by appellant's response thereto, in the light most favorable to appellant, genuine issues of material facts existed which should have been set for trial on the merits.

"III. The trial court once having denied the motion for summary judgment on April 3, 1995 committed prejudicial error when it granted said motion on August 7, 1995, without any motions for reconsideration or summary judgment having been filed or without any notice by the court to the parties of the court's sua sponte reconsideration."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we reverse the decision of the trial court.

Nick Papadelis owned rental property located at 33987 Iris Lane, Eastlake, Ohio. First American Savings Bank held a note for $33,250 from Papadelis, which was secured by a mortgage on that property. On October 10, 1991, the bank filed a foreclosure action in Lake County Common Pleas Court. In November of 1991, J. Thomas Dean, acting on behalf of the bank, sent a letter to the tenants in the building informing them that a receiver had been appointed by the court, and instructing them to pay rent to the receiver instead of Papadelis. Papadelis did not file an answer or otherwise respond to the complaint. A default judgment and a decree of foreclosure was entered against Papadelis on August 5, 1992.

Papadelis did not learn about Dean's receivership letter until after February 21, 1992. He subsequently filed the action *sub judice* alleging that First American had wrongfully interfered with his business relationship with his tenants. In November of 1991, First American allegedly represented to his tenants that a receiver had been appointed and instructed them to pay rents to the receiver rather than Papadelis. However, a receiver was not appointed by

the Lake County Common Pleas Court until February 14, 1992. Papadelis sought compensatory damages in the amount of $54,000.

First American moved for summary judgment and argued that the action was barred under the principle of res judicata. They asserted that res judicata applied because the tortious interference claim was a compulsory counterclaim to the original foreclosure action. The trial court initially denied the motion for summary judgment but subsequently granted the motion *sua sponte.* This appeal followed.

In his first assignment of error, Papadelis argues that the trial court erred in considering the affidavit of Howard Eisenhardt appended to and submitted in support of First American's motion for summary judgment. Papadelis asserts that Eisenhardt did not have personal knowledge of the facts and merely made bare allegations in a conclusory fashion, and, therefore, the affidavit was not in compliance with Civ.R. 56(E).

Civ.R. 56(E) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In this case, Eisenhardt's affidavit specifically states that he "has personal knowledge of the facts alleged herein." Thus, absent evidence to the contrary, this fact cannot be disputed.

Furthermore, if this court were to assume that Eisenhardt's affidavit was not in compliance with Civ.R. 56(E), then there still would not be sufficient grounds for reversal of the judgment. "When ruling on a motion for summary judgment, a trial court may consider documents other than those specified in Civ.R. 56(C) in support of the motion when no objection is raised by the party against whom the motion is directed." *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 8 OBR 347, 456 N.E.2d 1262 at paragraph one of the syllabus. Papadelis failed to object to Eisenhardt's affidavit when the case was before the trial court. Accordingly, any error in the trial court's consideration of Eisenhardt's affidavit was waived.

In his second assignment of error, Papadelis argues that the trial court erred in granting summary judgment in favor of First American because there were genuine issues of material fact as to whether his tortious interference claim was a compulsory counterclaim.

The standard of review for an appeal from summary judgment is set forth in Civ.R. 56, and we evaluate the record according to Civ.R. 56. Civ.R. 56 provides that before summary judgment may be granted it must be determined that "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the

evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

The issue in this case is whether Papadelis's claim for tortious interference was a compulsory counterclaim to First American's foreclosure action. Where a compulsory counterclaim within the meaning of Civ.R. 13(A) is not brought in an action, the doctrine of res judicata bars bringing that claim in a subsequent action. See *Geauga Truck & Implement Co. v. Juskiewicz* (1984), 9 Ohio St.3d 12, 9 OBR 61, 457 N.E.2d 827. Civ.R. 13(A) provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

The question of whether the counterclaim existed at the time the relevant pleadings were served is not in dispute. The only question before this court is whether the foreclosure and the tortious interference claims arise out of the same transaction. "The 'logical relation' test, which provides that a compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts, can be used to determine whether claims between opposing parties arise out of the same transaction or occurence." *Rettig Enterprises, Inc. v. Koehler* (1994), 68 Ohio St.3d 274, 626 N.E.2d 99. Where a cause of action does not arise out of the transaction or occurrence that is the subject matter of the underlying claim, but instead arises from the events that occur during the course of the underlying litigation, that cause of action is not a compulsory counterclaim. See *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 299, 626 N.E.2d 115, 119 (a claim for abuse of process not a compulsory counterclaim which must be brought in the underlying litigation).

In this case, the underlying claim was a foreclosure action which arose out of a note and mortgage that First American held on rental property owned by Papadelis. During the foreclosure action, First American moved for the appointment of a receiver. Prior to the court's appointment of a receiver, a representative of First American contacted the tenants in the rental property. First American's premature contact with the tenants during the foreclosure action was the basis of the tortious interference claim.

■ First American argues that the receivership arises out of the terms and conditions of the note and mortgage under the "logical relation" test. In its brief, First American states, "In accordance with the express provisions contained in paragraph 20 of the mortgage the Bank applied for the appointment of a receiver to manage the property and to collect the rents." However, an exhibit attached to or new facts included in an appellate brief cannot be considered as a part of the record on appeal. See *Middletown v. Allen* (1989), 63 Ohio App.3d 443, 579 N.E.2d 254. In this case, neither the mortgage from the underlying foreclosure action nor evidence of its express terms was included as a part of the record.

■ A reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings and then decide the appeal on the basis of the new evidence. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. See, also, *State v. Robinson* (1978), 53 Ohio St.2d 211, 7 O.O.3d 378, 373 N.E.2d 1257. Had a mortgage document that provided for receivership been offered in support of First American's motion for summary judgment, then the tortious interference claim would arguably have been a compulsory counterclaim to the foreclosure action. See *Rettig Enterprises, supra.* Because the mortgage First American held on the property in question was not in the record before the trial court, it cannot now be considered on appeal.

Absent evidence in the record that the mortgage had a receivership clause, this court cannot conclude that the tortious interference claim arose out of the same transaction as the foreclosure. Under the facts presented in support of summary judgment, the receivership notice sent out by First American arose directly from the underlying foreclosure action, not the mortgage. Therefore, Papadelis's claim for tortious interference was not a compulsory counterclaim to First American's foreclosure action and could be brought as a subsequent action. Accordingly, this action was not barred by the doctrine of res judicata, summary judgment is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

Because we reverse summary judgment on the merits, the third assignment of error is moot.

*Judgment reversed*
*and cause remanded.*

PATTON, J., concurs.

O'DONNELL, J., dissents.

O'DONNELL, Judge, dissenting.

I respectfully dissent from the majority opinion in this case because I believe the foreclosure and tortious interference claims arise out of the same transaction. Therefore, Papadelis's claim for tortious interference constitutes a compulsory counterclaim.

In August 1987, Nick Papadelis executed a note for $33,250 with First American Savings Bank, secured by a mortgage on rental property in Eastlake, Ohio. Subsequently, in October 1991, First American filed a complaint in Lake County Common Pleas Court seeking foreclosure of the property, and First American also filed a motion for a receiver, which was denied. Thereafter, in November 1991, J. Thomas Dean, acting on behalf of First American, sent a letter to tenants at the property advising them to pay rent to the receiver and not to Papadelis. In February 1992, First American filed an amended motion to appoint a receiver, and the trial court appointed J. Thomas Dean receiver. Then, in August 5, 1995, the trial court entered a default judgment and decree of foreclosure, and dismissed the receiver.

Papadelis subsequently filed a tortious interference claim against First American in Lake County Common Pleas Court, which was dismissed without prejudice, and then filed another tortious interference claim in Cuyahoga County Common Pleas Court, which gave rise to this appeal.

The relevant law for this case can be found in *Rettig Enterprises, Inc. v. Koehler* (1994), 68 Ohio St.3d 274, 626 N.E.2d 99, where the Ohio Supreme Court utilized the "logical relation" test to determine whether claims arise out of the same transaction or occurrence and held at paragraph two of its syllabus:

"The 'logical relation' test, which provides that a compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts, can be used to determine whether claims between opposing parties arise out of the same transaction or occurrence."

Applying the logical-relation test to the facts of this case, I begin by recognizing that First American filed its foreclosure action based on a note and mortgage signed by Papadelis, and that the trial court appointed a receiver pursuant to the terms of the mortgage. Papadelis's claim for tortious interference flows logically from First American's attempt to get a receiver appointed under the mortgage, and separate trials on these matters would involve a substantial duplication of effort and time by the parties and the courts.

Thus, although the actions of First American that Papadelis claims constitute tortious interference arose after the bank filed its foreclosure action, they still arose out of the same transaction or occurrence and are distinguishable from the

circumstances in *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294. In *Yaklevich*, the Ohio Supreme Court held an abuse-of-process claim to be a permissive counterclaim because the claim arose from the events of the underlying litigation itself and did not arise from the opposing party's claim in the underlying litigation.

In this case, Papadelis's claim for tortious interference arose from events surrounding First American's attempt to get a receiver appointed. Although these events occurred during the underlying foreclosure action, they specifically arose from the provisions of the mortgage that constitute the substance of the opposing party's claim in the underlying litigation.

Therefore, because Papadelis's claim for tortious interference is logically related to the foreclosure action filed by First American Savings Bank, it arose out of the same transaction or occurrence, and accordingly, I dissent.